[Cite as *First Natl. Bank of Pennsylvania v. Jones*, 2014-Ohio-746.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF PENNSYLVANIA, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2013-T-0083** |
| | : | |
| - vs - | : | |
| | : | |
| MARY ANN JONES, et al., | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 11 CV 1323.

Judgment: Reversed and remanded.

*Thomas J. Lipka* and *David A. Detec*, Manchester, Bennett, Powers & Ullman, L.P.A., The Commerce Building, Atrium Level Two, 201 East Commerce Street, Youngstown, OH 44503 (For Plaintiff-Appellee).

*John H. Chaney, III*, Daniel Daniluk, L.L.C., 1129 Niles-Cortland Road, S.E., Warren, OH 44484 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1}   Defendant-appellant, Mary Ann Jones, appeals from the Judgment Entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, First National Bank of Pennsylvania (First National) and ordering the foreclosure of her real property.  The issue to be decided in this case is whether the statutory amount of an individual's interest in her real property for the purposes of

applying the "homestead exemption" under R.C. 2329.66(A)(1)(b) is determined as of the date of a judgment lien or at a later date. For the following reasons, we reverse and remand the decision of the lower court.

{¶2} On June 20, 2011, First National filed a Complaint for Foreclosure in the Trumbull County Court of Common Pleas. In the Complaint, First National asserted that on November 8, 2000, Jones executed an unconditional Guaranty, guaranteeing payment of a loan made by First National to Penn-Ohio Property Management. The Complaint asserted that Jones defaulted on her obligation and a judgment was entered against her, in the state of Pennsylvania, and was transferred to Trumbull County in 2004. Pursuant to the attached judicial report, a Judgment Lien was filed against Jones in the amount of $165,913.52 in 2009. First National asserted that, pursuant to this lien, it was entitled to foreclose upon real property owned by Jones, located at 9010 Cain Drive, Warren, Ohio.

{¶3} On September 21, 2011, Jones filed a Notice of Stay, notifying the court of an automatic stay as a result of her filing of a Petition in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. First National subsequently filed a Motion to Reinstate Case to Active Docket, based upon the dismissal of Jones' bankruptcy case.

{¶4} On October 24, 2012, Jones filed an Answer, in which she asserted that her property was exempt from, inter alia, sale or foreclosure, pursuant to R.C. 2329.66(A)(1)(b). In her Amended Answer, filed on March 21, 2013, she raised the same argument. [1]

---

1. The Answer and Amended Answer were initially filed under the wrong case number, but were subsequently deemed timely filed by the trial court.

2

**{¶5}** A second Notice of Stay was filed by Jones on February 19, 2013, based on the filing of another Petition in the Bankruptcy Court. First National filed a Motion to Reinstate Case to Active Docket on March 11, 2013.

**{¶6}** First National filed a Motion for Summary Judgment on May 8, 2013, asserting that there was no genuine issue of material fact, since it held a properly filed judgment lien on Jones' property and was entitled to foreclose.

**{¶7}** On May 21, 2013, Jones filed her Motion for Summary Judgment. She asserted that the "homestead exemption" contained in R.C. 2329.66(A)(1)(b) applied and that the lien "impairs [her] homestead exemption and cannot be enforced through foreclosure."

**{¶8}** On June 18, 2013, First National filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment. It argued that the prior statutory amount of the homestead exemption should apply, which was in effect at the time the lien attached to Jones' property. Under this amount, which was only $20,200, Jones' property would not qualify for the exemption, since her interest in the property exceeded that amount.

**{¶9}** On July 10, 2013, the trial court issued a Judgment Entry of Summary Judgment on Foreclosure. It ruled that the "appropriate exemption amount is the amount in effect at the time a judgment lien accrues." It further held that "[s]ince Plaintiff's judgment lien accrued in 2004 any exemption amount available to the Defendant would be the statutory amount at that time." The court then granted First National's request for foreclosure.

**{¶10}** Jones timely appeals and raises the following assignment of error:

{¶11} "The trial court erred to the prejudice of Appellant by determining, contrary to Ohio Revised Code § 2329.66, that the appropriate exemption amount due to Appellant is the amount in effect at the time the judgment lien accrues."

{¶12} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶13} Pursuant to R.C. 2329.66(A)(1)(b): "Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows: * * * In the case of all other judgments and orders [not relating to money owed for health care services or supplies], the person's interest, not to exceed one hundred twenty-five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." This is often referred to as the "homestead exemption." Although the majority of cases applying the homestead exemption take place in the bankruptcy

courts, the homestead exemption of R.C. 2329.66(A)(1)(b) "is generally applicable in executions against real property in state court." *Johnson v. Cromaz*, 11th Dist. Geauga No. 98-G-2151, 1999 Ohio App. LEXIS 6240, 8 (Dec. 23, 1999).

{¶14} It has been emphasized that "[e]xemption statutes should be liberally construed in favor of a debtor claiming homestead rights." *Adkins v. Massie*, 4th Dist. Lawrence No. 99CA18, 2001 Ohio App. LEXIS 3154, 6 (Mar. 12, 2001); *Dennis v. Smith*, 125 Ohio St. 120, 125, 180 N.E. 638 (1932) ("[l]aws exempting property of a debtor from execution are to be construed liberally in his favor") (citation omitted).

{¶15} In the present case, the issue is not whether the homestead exemption is applicable, but, instead, the statutory amount of Jones' interest in the real property to which the exemption applies. Prior to March 27, 2013, the exemption applied when the party's interest did not exceed $22,200. Beginning on that date, however, Jones' interest must not exceed $125,000 for the exemption to apply. Jones argues that the latter is applicable, since her interest becomes effective upon execution or sale of her real estate to satisfy the judgment lien.

{¶16} First National appears to concede that the exemption would apply if this court determined the $125,000 amount was applicable. However, it asserts that the applicable amount is that contained in the statute at the time the judgment lien was entered against her several years ago, i.e., $22,200.

{¶17} A review of this state's appellate cases reveals no pertinent law on this specific issue, nor do the parties cite any such law. Upon considering the statutory language, we determine that the applicable property interest amount is that contained in

5

the statute in effect at the time of the lower court's ruling in this case, in the amount of $125,000.

{¶18} As is stated in the statute, the property owner's "'interest' shall be determined," in "cases other than bankruptcy proceedings, as of the date of an appraisal, if necessary under section 2329.68 of the Revised Code, or the issuance of a writ of execution." R.C. 2329.66(D)(2). In the present case, there is no indication that an appraisal was involved, under R.C. 2329.68, for the purposes of determining the value for the exemption, so the interest in the property was to be determined as of the date of the issuance of a "writ of execution." A writ of execution has been described as a direction to the sheriff "commanding him to seize or take possession of property and to sell it in the manner provided by law for the satisfaction of judgments." *Lash v. Mann*, 141 Ohio St. 577, 49 N.E.2d 689 (1943), paragraph two of the syllabus; *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 182, fn., 327 N.E.2d 654 (1975) ("an execution is a remedy afforded by law for the enforcement of a judgment" whose "object is to obtain satisfaction of the judgment on which the writ is issued") (citation omitted). *See also Huntington Natl. Bank v. Motel 4 BAPS, Inc.*, 191 Ohio App.3d 90, 2010-Ohio-5792, 944 N.E.2d 1210, ¶ 9 (8th Dist.), citing R.C. 2327.01 and R.C. 2327.02 ("a writ of execution is 'a process of a court, issued by its clerk, and directed to the sheriff of the county * * * against the property of the judgment debtor, including orders of sale'").

{¶19} A logical reading of the statute leads to the conclusion that the amount of the exemption should be determined as of the date Jones' interest in the exemption arises, since the amount of the exemption is directly tied to the determination of the debtor's interest. This occurs on the issuance of a writ of execution, not on the date of a

6

judgment or a lien. Although First National argues that the exemption amount should be determined as of the date of the judgment lien, this does not follow from the statutory language. The judgment lien applied to property owned by Jones, but has no relation to the value of her property for the purposes of determining whether her interest in the property should be exempt from being foreclosed upon and sold.

{¶20} In this case, there was no assertion that a writ of execution existed prior to the court's issuance of the present Judgment Entry granting summary judgment, and the order within that Entry to sell the property pursuant to the foreclosure. Thus, there would be no basis for finding that the prior exemption amount would apply on this ground. This is consistent with case law relating to the time for the assertion of a debtor's exemption claim. "A homestead exemption is not effective until there is an involuntary execution that subjects the property to judicial sale." *Adkins*, 2001 Ohio App. LEXIS 3154, at 7; *Gale v. Ficke*, 148 Ohio App.3d 657, 2002-Ohio-4030, 775 N.E.2d 548, ¶ 7, fn. 2 (8th Dist.); *Gledhill v. Walker,* 143 Ohio St. 381, 385-386, 55 N.E.2d 647 (1944) ("[t]he proper time for the assertion of the debtor's claim, under the statutes to have such homestead exempted from sale, is when the sheriff or other officer is about to execute the writ of execution or order of sale") (citation omitted).

{¶21} First National argues that this conclusion is contrary to the language of H.B. 479, which enacted the March 27, 2013 version of R.C. 2329.66. Pursuant to Section 3 of the Act, the amendments made to "sections 2329.66 and 2329.661 of the Revised Code shall apply to claims accruing on or after the effective date of this act." One problem with this language is that it is unclear what is meant by "claims accruing." It may be referring to the accrual of the debtor's exemption claim, given that the statute

7

repeatedly refers to the debtor's homestead exemption as a "claim." In *In re Depascale*, 496 B.R. 860 (Bankr.N.D.Ohio 2013), the bankruptcy court interpreted the same language and reached a similar conclusion, questioning the meaning of Section 3 of H.B. 479, finding that "[t]he inherent contradictions within Section 3 make it totally unworkable as a statement of legislative intent," and further explaining that it is unclear from that language whether it involves "claims of exemption by the debtor or claims asserted by a creditor." *Id.* at 871-872.

**{¶22}** In the absence of a clearer statement of intent, we find no reason to determine that this language should counteract the existing language in the statute, which determines the debtor's interest as of the date of the writ of execution. Statements included in legislation but not placed in the code are "uncodified law." *See Maynard v. Eaton Corp.*, 119 Ohio St.3d 443, 2008-Ohio-4542, 895 N.E.2d 145, ¶ 7. While uncodified law is "part of the law of Ohio," it should not be used to displace statutory language where the meaning of the statute is clear. *Id.*; *Washington Environmental Servs., LLC v. Morrow Cty. Dist. Bd. of Health,* 10th Dist. Franklin No. 09AP-920, 2010-Ohio-2322, ¶ 21. Based on the language contained in the statute itself, we cannot find that the language in Section 3 of the Act provides a basis for adopting First National's interpretation in this case. Moreover, if the legislature intended the increase in the exemption amount to apply only to judgments or liens filed after the effective date of H.B. 479, it could have expressly made this statement in the statute. No mention of judgments, such as a lien, are contained in the statutory language as a basis for determining the exemption applicability.

**{¶23}** Further, while First National had a lien on the property prior to the enactment of the legislation changing the homestead exemption, it had "an obligation to assert and enforce such right promptly under the existing statutory framework," given that "it was known that the homestead exemption laws are periodically updated and changed." *Depascale* at 874. Therefore, First National was not deprived of any rights under this application of the law.

**{¶24}** Finally, Jones cites *In re Depascale* in support of her claim, which First National notes is distinguishable because it occurred in a bankruptcy case. In *Depascale*, the court was required to apply the statute as it related to bankruptcy proceedings. The court specifically noted this, holding that the language of the statute "makes clear that a debtor's interest in the exempted property is determined as of the petition date, and the Court need look no further." *Id.* at 870. While its ultimate holding is distinguishable on these grounds, it is unnecessary to rely on *Depascale* to reach our holding, for the reasons outlined above. This does not, however, change the fact that its analysis is persuasive on certain points that are consistent in both bankruptcy and state law cases, as discussed above. In fact, *Depascale* provides a helpful comparison, in that it uses the date the debtor's interest is determined as the date for the applicable exemption amount, which is the same analysis adopted by this court, albeit under R.C. 2329.66(D)(2), involving non-bankruptcy cases, rather than under (D)(1).

**{¶25}** Based on the foregoing, we find that the trial court erred in holding that the homestead exemption should not apply, based on its finding that the "appropriate exemption amount is the amount in effect at the time a judgment lien accrues."

**{¶26}** The sole assignment of error is with merit.

9

{¶27} For the foregoing reasons, the Judgment Entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of First National Bank of Pennsylvania and ordering the foreclosure of Jones' real property is reversed and remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.